UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

ETHEL LEE                              )
                    Plaintiff,         )
                                       )
vs.                                    )        NO.  4:06-cv-57
                                       )
USAI                                   )        MATTICE/CARTER
(UNITED SERVICE ASSOCIATES, INC.)  )
                    Defendant.         )


REPORT AND RECOMMENDATION

I. Introduction

The District Court has entered default against the defendant in the instant case

and has referred the Plaintiff's motion for default judgment (Doc. No. 8) to the

undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B) and (C).  An evidentiary hearing was held on July 16, 2007 on the

Plaintiff's motion for default judgment for the purpose of determining damages. Further,

Plaintiff filed affidavits on August 1, 2007 (Doc. No. 17) and August 30, 2007 (Doc. No.

18) which the undersigned has also relied upon in preparing this Report and

Recommendation.

II. Evaluation of Plaintiff's Claims

A. Standard of Review

Before the undersigned can address the damages issue in the present case, I must

first consider the viability of the Plaintiff's claims set forth in her complaint. The

granting of a motion for default judgment is "at all times left within the sound discretion

of the court." *In re Irby*, 337 B.R. 293, 294 (Bankr. N.D. Ohio 2005) (applying Federal Rule of Bankruptcy Procedure 7055, which incorporates Federal Rule of Civil Procedure 55). Courts have recognized, however, that "[i]t is fundamental that not all injuries are legally compensable; a tenet which may not be bypassed simply because a party fails to respond to a complaint. Thus, among the considerations a court is to employ when determining the propriety of entering a judgment by default is whether there exists a sufficient basis in the pleading for the judgment's entry; or similarly, whether a viable cause of action is alleged." *Id.* (citations omitted).

Accordingly, the U.S. Court of Appeals for the Sixth Circuit has decided that courts should exercise their given discretion in favor of denying a motion for default judgment when the Plaintiff's complaint fails to state a claim upon which relief can be granted. *Bailey v. Harrison*, 107 F.3d 870, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997); *In re Cook*, 342 B.R. 384, 2006 WL 908600, at *3 (B.A.P. 6th Cir. Apr. 3, 2006) (applying Federal Rule of Bankruptcy Procedure 7055, which incorporates Federal Rule of Civil Procedure 55); *see also Parks v. Conley*, 178 F.3d 1295, 1999 WL 195740, at *2 (6th Cir. Mar. 23, 1999) (denying motion for default judgment and granting summary judgment in favor of the opposing party); *Starr v. Corley*, 662 F. Supp. 219, 220 (N.D. Ohio 1987). In determining whether the complaint states a claim, the court should accept as true all well-pleaded allegations, except those relating to the amount of damages. *Cook*, 2006 WL 908600, at *3; Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a

responsive pleading is required, other than those as to the amount of damages, are admitted when not denied in the responsive pleading.")[1]

## B. The Complaint

The Plaintiff alleges that she, a white female, is and was at all relevant times employed as a janitor by USAI, a minority owned company, at the Arnold Engineering Development Center in Franklin County, Tennessee. Complaint ¶¶ 5-7, 70.[2]  In October of 2004, the Plaintiff was verbally assaulted three times by a co-employee, Shirley Landers, who is black. ¶¶ 9, 19.  Though the Plaintiff notified her supervisor, Coleman March, who is black, no action was taken until the third occasion on October 18, 2004, when Plaintiff was so frightened that she called 911 for help. ¶¶ 19-20.  Mr. March initially concluded in a letter dated November 12, 2004, that Mr. Lee's complaint was warranted and a warning letter would be placed in Ms. Lander's personnel file. ¶ 24-29. On this same date, November 12, 2004, in retaliation for filing a complaint against Ms. Landers, Coleman March issued a Warning Letter to the Plaintiff for sexual harassment.

---

[1]Once the court has determined that it will not grant a motion for default judgment because certain of the plaintiff's claims are not viable, the court must then determine how best to dismiss such claims.  The court essentially has two options: (1) dismiss the complaint at the same time as it denies the motion for default judgment or (2) give the plaintiff notice of the intent to dismiss the complaint.  At least a few courts have adopted the first option and dismissed the plaintiff's complaint at the same time as it denied the motion for default judgment. *See, e.g.*, *Cook*, 2006 WL 908600, at *2, 5; *Euro-Am. Coal Trading, Inc. v. James Taylor Mining, Inc.*, 431 F. Supp. 2d 705, 709 (E.D. Ky. 2006) (dismissing for lack of subject matter jurisdiction rather than failure to state a claim); *Starr*, 662 F. Supp. at 221; *Irby*, 337 B.R. at 297.  Since I conclude the Plaintiff's complaint does state viable causes of action, there is no need to address the question of the appropriate course to take if the complaint fails to state a claim.

[2]All further references in this section are to the Plaintiff's complaint hereinafter which will be referenced by paragraph number only.

¶¶ 32-33.  This letter was placed in her personnel file, but was subsequently removed by Martha Otwell on November 17, 2004. ¶ 34.  On January 14, 2005, Mr. March placed a Letter of Caution in Ms. Lee's personnel file regarding the October 18, 2004 incident stating she engaged in an argument with Ms. Landers in violation of USAI policy. ¶¶ 35-38.  The letter also removed the Plaintiff for a one year period from her permanent position on the "G-Range" work detail which is paid at a higher rate than other details and provides more opportunities for overtime. ¶¶ 37, 39, 66, 82.  Ms. Landers was not removed from her permanent position at USAI. "This letter was an act of retaliation and disparate treatment based on race." ¶ 38. Ms. Landers has a long history of misconduct, and Ms. Lee had no record. ¶ 73.  Ms. Landers has thrown a brick at a co-worker's car, brought a switch blade to work, made threats toward co-workers, pushed a fellow worker and been involved in several verbal altercations. ¶¶ 96-100.  Ms. Lee and Ms. Landers received similar punishment even though Ms. Landers was found to be the aggressor and was at fault and had a disciplinary record. ¶¶  72-73.  Also on January 14, 2005, Mr. March placed a "Final Written Warning" in Ms. Lee's personnel file concerning another verbal altercation involving Ms. Landers even though Ms. Lee was not involved in the altercation in question. ¶¶ 40, 70c.  "This Letter of Warning is an act of retaliation and an act of disparate treatment based on race." ¶ 43.  Ms. Lee filed a grievance with her employer concerning the disciplinary actions taken against her. ¶ 44.  During the pendency of her grievance, she also filed a racial discrimination claim with the Tennessee Human Rights Commission (THRC). ¶ 46.  Her grievance with USAI was denied on the basis of her race and in retaliation for her filing a discrimination claim with

the THRC. ¶¶ 45-49. After Plaintiff filed her complaint with the THRC, Gary Vanzant who is black, one of the Plaintiff's supervisors, and reviewed her first step of the grievance filed with USAI, "told a group of employees that the word from headquarters, specifically, Mary Melton (black), USAI's human resource liaison, was that the 'next person to file a complaint, goes out the gate.'" ¶¶ 50, 71. Since the time she filed the claim against USAI with the THRC, USAI has engaged in acts of retaliation and created a hostile work environment on the basis of her race. Acts constituting a hostile work environment include, (1) Mr. March gave her a formal evaluation for the first time during her ten year employment with USAI and falsely ranked her below average in certain categories, (2) Mr. March began "digging for dirt" by questioning her customers about her work product for the first time, (3) USAI failed to act after Plaintiff notified "management" that Ms. Landers was heard screaming to an audience of co-workers that Plaintiff had "slept with every man on base," among other derogatory remarks, (4) someone put in her locker an "inappropriate post-it note" and an e-mail containing a derogatory sexual joke concerning a woman named Ethel, which is the Plaintiff's first name, 5) USAI management levied false allegations of misconduct, poor work performance, and failure to be a team player, and 6) USAI management threatened to fire the next person who filed a discrimination claim. ¶¶ 52-61, 86, 87, 90. USAI retaliated against her for filing a complaint of race discrimination and hostile work environment with the THRC by failing to return her to the G-Range work detail after her one year suspension from that detail expired. ¶¶ 66-67. Ms. Landers has since had her personnel file purged of all negative documentation but the Plaintiff has not. ¶ 81. In the summer

of 2006, Ms. Landers was involved in another verbal altercation with a black employee, but neither employee was disciplined as harshly as the Plaintiff had been disciplined. ¶ 83.

Count I of Plaintiff's complaint alleges disparate treatment on the basis of race in violation of Section 1981 and Title VII in the manner in which she was disciplined for her verbal altercation with Ms. Landers. ¶¶ 69-74. Counts II through VIII allege retaliation for complaints of disparate treatment Plaintiff filed with USAI and the THRC based on: 1) the November 12, 2004 Warning for sexual harassment, 2) the January 14, 2005 Letter of Caution concerning the October 18, 2004 incident, 3) the January 14, 2005 Final Written Warning, 4) USAI's refusal to return Plaintiff to the G-Range detail after her one year suspension from it, 5) USAI 's evaluation of her work performance as poor, and 6) the denial of her grievance filed with USAI. ¶¶ 75-79. Counts IX through XI allege disparate treatment in that Ms. Landers' file was purged of negative content but hers was not and Plaintiff was on two occasions disciplined more harshly than were black employees for the same conduct. ¶¶ 80-83. Count XII is a claim for hostile work environment. ¶¶ 84-92. The last count is a claim for negligent retention of Shirley Landers. Plaintiff alleges that USAI knew or should have know of Ms. Landers's history of violence and aggression, and USAI's negligent retention of Ms. Landers resulted in harm to the Plaintiff. ¶¶ 95-102.

C. Evaluation

*1. Disparate Treatment*

To establish a prima facie case of racial discrimination using circumstantial evidence, the Plaintiff must demonstrate: (1) membership in the protected group; (2) qualification for the position; (3) an adverse employment decision; and (4) replacement by a person outside the protected class or different treatment from similarly situated non-protected employees. *Newman v. Federal Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001) (citing *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995)); *see also, McGinnis v. United States Air Force*, 266 F.Supp.2d 748, 760 (S.D. Ohio 2003). The elements for an employment discrimination claim under 42 U.S.C. § 1981 are identical to the elements for an employment discrimination claim under Title VII. *Quinn-Hunt v. Bennett Enterprises, Inc.*, 122 Fed. App. 205, 207 (6th Cir. Jan. 26, 2005) (unpublished); *Schurr v. Resorts Int'l Hotel Inc.,* 196 F.3d 486, 499 (3d Cir. 1999).

Plaintiff has stated a claim for disparate treatment on the basis of race under both Title VII and Section 1981. According to the Plaintiff, she (white) and Ms. Landers (black) were both involved in verbal altercations and Ms. Landers was at fault - not the Plaintiff. Nevertheless, Plaintiff was punished more severely by losing her permanent assignment and by not having negative comments removed from her personnel file. Ms. Landers was not removed from her permanent assignment and the negative comments in Landers' file were removed.

*2. Retaliation*

Title VII prohibits discrimination against employees who attempt to protest or correct allegedly discriminatory employment conditions.  *See* 42 U.S.C. § 2000e-3(a). To state a prima facie claim of retaliation, a Plaintiff must demonstrate that: "1) she engaged in protected activity; 2) her employer knew of the protected activity; 3) the employer took an 'adverse employment action' against the plaintiff; and 4) a causal connection exists 'between the protected activity and the adverse employment action.'" *McGinness*, 266 F.Supp. at 773 (quoting *Hafford v. Seidner*, 183 F.3d at 515).  A plaintiff may also demonstrate the third prong of the prima facie case by showing that she "was subjected to severe or pervasive retaliatory harassment by a supervisor." *Donahoo v. Dept. of Youth Serv's,* 237 F. Supp.2d 844, 871 (N.D. Ohio 2002).

Plaintiff has sufficiently alleged retaliation against her for filing a grievance with USAI concerning her discipline and for filing complaints alleging racial discrimination with the THRC – all conduct known to management at USAI and protected activity under Title VII.  The complaint is replete with alleged instances of retaliation by supervisors such as trumping up reasons to give a poor performance evaluation, trumping up reasons to discipline her, refusing to return Plaintiff to her former position after one year, refusing to her purge her personnel file of negative comments and denying her grievance.

*3. Hostile Work Environment*

To establish a prima facie case of a hostile work environment on the basis of race, a plaintiff must demonstrate:

> 1) that he is a member of a protected class; 2) that he was subjected to
> unwelcome racial harassment; 3) that the harassment was based on race;

4) that the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile or offensive work environment; and 5) the existence of employer liability.

*Newman*, 266 F.3d at 405. In addition, "'[t]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive.'" *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999)(quoting *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997)). An employer is liable for co-worker harassment only if it knew or should have known of the harassment and failed to implement prompt and appropriate corrective action. *Hafford v. Seidner*, 183 F.3d 506, 512-13 (6th Cir. 1999); *Nievaard v. City of Arthur,* 124 Fed.Appx. 948, 953 (6th Cir. 2005). But in the case of harassment committed by a supervisor, an employer's liability is vicarious. *Id.* Moreover, conduct taken in retaliation for filing a discrimination claim can create a hostile work environment if the conduct is severe and pervasive enough. *See Willey v. Slater*, 20 Fed. Appx. 404 (6th Cir. 2001).

Plaintiff alleges that because she filed a complaint against a black co-worker and because she filed claims of racial discrimination against USAI with the THRC, her supervisors engaged in harassing conduct such as trying to dig up dirt on her, trumping up false claims of poor performance and giving her bad evaluations, trumping up a claim of sexual harassment, refusing to act when she reported the harassing conduct of co-workers, telling her she was not a team player, and threatening to fire the next person who filed a discrimination claim. The Plaintiff has sufficiently stated a claim of hostile work environment on the basis of race.

*4. Negligent Retention or Supervision.*

In Tennessee, a plaintiff may recover under the theory of negligent supervision for harm cause by an intentional act of an employee acting outside the scope of the employee's employment where the employer failed to act with reasonable care to prevent injury from a harm that is foreseeable. *Hays v. Patton Tully Transp. Co.*, 844 F. Supp. 1221, 1222 (W.D. Tenn. 1993); *Overland v. Swifty Oil Co., Inc.*, 2001 WL 856580, *3 (Tenn.Ct.App. 2001). Plaintiff alleges the following: that USAI knew or should have known that Ms. Landers had a long history of aggression and violence and that it was foreseeable she would continue to act in this manner. Nevertheless, USAI negligently continued to retain Ms. Landers who then caused harm to Ms. Lee. Plaintiff has sufficiently stated a claim for negligent retention or supervision.

<u>III. Assessment of Damages</u>

<u>A. Findings of Fact</u>

The Plaintiff's evidence on damages came to be heard by the Court on July 16, 2007. On the basis of the evidence admitted at the hearing and the two affidavits Plaintiff subsequently filed with the Court, I make the following findings of fact:

1.  In October 2004, Plaintiff's regular hourly rate was $15.42. However, Plaintiff was also assigned to work in an area known as the "G-Range" whenever such work was available. Work in the G-Range is referred to as "Tunnel Work." The hourly rate for Tunnel Work was $17.42. Plaintiff's hourly overtime rate for Tunnel Work was $26.13. The tunnel located in the G-Range was used to test various types of projectiles. Therefore, Tunnel Work was usually performed as

overtime work because the tunnel could not be cleaned during regular hours when testing was being conducted.

2.  As of January 4, 2005, approximately ten (10) days prior to Plaintiff's removal from G-Range, Plaintiff had accumulated 1133.028 hours of overtime Tunnel Work at the G-Range. *See* Plaintiff's Exhibit 3, line 32. Plaintiff's Exhibit 3 is an overtime report which provides a *cumulative* total of all overtime offered or worked by USAI employees up to January 4, 2005 during the course of their work at the Arnold Engineering Development Center.[3]

3.  When Plaintiff was removed from G-Range, she was replaced by Judy Cope, who had less seniority than she. Because Tunnel Work paid at a higher rate than other janitorial work, assignment to the G-Range was based on seniority.

4.  The December 29, 2006 Overtime Report shows Judy Cope had 2227.528 hours of overtime Tunnel Work in the G-Range. *See* Plaintiff's Exhibit 4, line 30. Plaintiff's Exhibit 4 is an Overtime Report which provides a *cumulative* total of all overtime offered or worked by USAI employees from the start date of the January 4, 2005 Overtime Report up to the end date of the December 29, 2006 Overtime Report. Therefore, the overtime hours reflected in the January 4, 2005 Overtime Report are included in the overtime hours reflected in the December 29, 2006 Overtime Report. According to the Plaintiff, the Overtime Reports provide

---

[3]Plaintiff could not say what is the start date for the January 4, 2005 Overtime Report. However, that information is not necessary for purposes of determining back pay since the period for which the Plaintiff is due back pay is, approximately, the time between the end date of the first Overtime Report (January 4, 2005) and the end date of the second Overtime Report (December 29, 2006).

cumulative hours on a *position* by *position* basis.  Therefore, since Ms. Cope replaced Ms. Lee in the G-Range, Ms. Cope's listed hours of overtime Tunnel Work in the amount of 2227.528 on the December 29, 2006 Overtime Report (line 30) include Ms. Lee's 1133.028 hours of overtime Tunnel Work in the G-Range which is reflected in the Overtime Report of January 4, 2005 (line 32).

5.  Subtracting Plaintiff's overtime Tunnel Work hours of 1133.028 from her replacement's (Ms. Cope) overtime Tunnel Work hours of 2227.528 equals 1094.500 hours of overtime Tunnel Work in the G-Range between January 5, 2005 and December 29, 2006.

6.  However, the Plaintiff was not removed from overtime Tunnel Work until approximately January 15, 2005.  Therefore, I can deduce the Plaintiff was assigned to overtime Tunnel Work from January 5, 2005 through January 15, 2005.  Plaintiff approximates that at most she would have accumulated twenty-five (25) overtime hours from the time of the January 4, 2005 Overtime Report to her removal from the G-Range - Tunnel Work detail on  January 15, 2005.

7.  As such, the amount of overtime hours that Plaintiff missed as result of her removal from G-Range- Tunnel Work was 1094.500 minus 25 for a total of 1069.5 hours of overtime Tunnel Work in the G-Range.

8.  By multiplying the number of hours Plaintiff missed in overtime Tunnel Work (1069.5 hours) by the Tunnel Work overtime hourly rate of $26.13, the total amount of pay for such work is $27,946.04.

9. However, the Plaintiff could have worked 138.498 hours of regular overtime at a rate of $23.13 for a total of $3,203.46 from the time she was removed from overtime Tunnel Work (January 15, 2005) until December 29, 2006. This 138.498 hours is derived by subtracting 920.528 overtime hours (listed as Ms. Cope's overtime at line 9 of the January 4, 2005 Overtime Report) from 1059.026 overtime hours (listed as Ms. Lee's overtime hours at line 8 of the December 29, 2006 Overtime Report). Ms. Lee took Ms. Cope's position when Ms. Cope was transferred into the Plaintiff's position in the G-Range. Hours are listed *cumulatively* on a *position* basis on both Overtime Reports ( Plaintiffs' Ex. 3 & 4). Thus, line 8 on the December 29, 2006 Overtime Report is the total number of *regular* overtime hours worked by both Ms. Lee and Ms. Cope who occupied the same position but at different times.

10. There are no more Overtime Reports for Tunnel Work after the December 29, 2006 Overtime Report because testing in the tunnel was discontinued.

11. In order to assess Ms. Lee's back wages, subtract the regular overtime wages she could have made after she was removed from the G-Range ($3,203.46) from the amount of overtime Tunnel Work wages she could have made if she had not be removed from the G-Range ($27,742.54.) Therefore, the Plaintiff is entitled to $24,742.54 in back wages.[4]

---

[4] *See* Appendix 1 to this Report and Recommendation and the Plaintiff's August 30, 2007 affidavit (Doc. No. 18) for further explanation of how Plaintiff's back pay was calculated.

12. Plaintiff was willing and able to work the overtime Tunnel Work in G-Range had she not been unlawfully removed.

13. Plaintiff's loss of back wages is directly related to Defendant's discrimination and retaliation against her.

14. Plaintiff wishes to be reinstated to her former position at G-Range.

15. G-Range testing is currently shut down, but, should it resume, Plaintiff is entitled to be returned to her prior position to earn the extra Tunnel Work and overtime pay associated with the G-Range position.

16. Plaintiff has seniority to be placed in the G-Range position.

17. Plaintiff's removal from G-Range is directly related to Defendant's discrimination and retaliation against her.

18. Defendant has placed negative paperwork in the Plaintiff's personnel file, including but not limited to, a Letter of Caution, references to her suspension from G-Range, and an adverse counseling.

19. Said negative paperwork is a direct result of the discriminatory and retaliatory actions taken against the Plaintiff by the Defendant.

20. Plaintiff has suffered emotional pain, mental anguish, and physical harm as the result of the discriminatory acts of the Defendants.

21. Plaintiff suffered humiliation on numerous occasions as a result of the Defendant's discriminatory and retaliatory actions.

22. Plaintiff has been employed at Arnold Engineering Development Center for 23 years and for 12 of those years she has been employed by the Defendant. Until

the time of the Defendant's discriminatory actions, Plaintiff had never received a negative counseling or negative work evaluation.

23. After the discriminatory actions and retaliation, Plaintiff's work product was questioned.

24. The Defendant accused Plaintiff of sexual harassment.

25. The Defendant removed Plaintiff from G-Range and placed her into another work position and did not return her.

26. The Plaintiff feared for her physical safety, and the Defendant failed to take action. Plaintiff was harassed by Ms. Landers and Defendant failed to take action.

27. The Defendant created an atmosphere of fear and resentment by threatening to terminate anyone else that filed a complaint. The Defendant's actions created an extremely uncomfortable working environment for the Plaintiff.

28. As a result of the discriminatory actions and retaliation of the Defendant, the Plaintiff suffered from depression, humiliation, anxiety and fearfulness. Plaintiff also suffered from stress induced headaches, sleeplessness, and loss of appetite. Plaintiff felt that her integrity had been questioned and that her personality had gone from been carefree and outgoing to withdrawn and intimidated.

29. The Plaintiff's quality of life decreased as she was pre-occupied and stressed. Plaintiff could not enjoy her family and friend relationships as she once did. And Plaintiff lost friendships at work because of the Defendant's discriminatory acts and retaliation.

30. Defendant engaged in discriminatory practices with malice and reckless indifference to the federally protected rights of the Plaintiff.

31. Defendant knew of Plaintiff's federally protected rights because Defendant published a booklet along with the Union that set forth Plaintiff's rights under federal law.

32. Despite Defendant's knowledge of said law, Defendant engaged in discriminatory practices with malice and reckless indifference on several occasions:

    a. Especially egregious is that Defendant threatened to terminate the employment of anyone else that filed a complaint.

    b. Defendant removed Plaintiff from G-Range and failed to return her to G-Range even after her one year suspension had passed.

    c. Defendant created a hostile working environment for the Plaintiff and failed to take action despite numerous complaints by the Plaintiff.

    d. Defendant continuously retaliated against the Plaintiff for her efforts and insistence in pursuing her legally protected rights.

33. The Plaintiff hired counsel to help her with her discrimination claim against her employer, the Defendant.

34. The Plaintiff's counsel has expended approximately 92 hours to date in prosecuting the Plaintiff's claim.

35. Plaintiff's counsel's hourly rate is $125.00 per hour and said rate is reasonable.

36. The hours Plaintiff's counsel has spent on prosecuting Plaintiff's claim is reasonable given the issues in the case and the numerous factual allegations. Counsel has billed a total of 80.9 hours at $125 per hour and 18.5 hours of legal research at $50.00 an hour.

37. Plaintiff's counsel current fee is $10,875.00.

38. Plaintiff has expended $350.00 in court costs (the filing fee) in this matter.

B. Conclusions of Law

39. Plaintiff has elected to receive her remedies under Title VII.[5]  Accordingly, pursuant to 42 U.S.C.A. § 2000e-5(g), the Plaintiff may receive back pay, reinstatement, and "any other equitable relief as the court deems appropriate" for the Defendant's intentional acts of discrimination in violation of Title VII. Plaintiff may also receive compensatory and punitive damages pursuant to 42 U.S.C. § 1981a.

40. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."  42 U.S.C.A. § 2000e-5(g).

41. It is RECOMMENDED that Plaintiff be awarded back pay in the amount of $24,742.54.

---

[5]Regardless of whether the Plaintiff elected to receive her remedies under 42 U.S.C. § 1981 or her state law claim, I would not recommend an award of damages greater than the amount I am recommending pursuant to her successful Title VII claims.

42. The Plaintiff is still employed by USAI and has the seniority to be assigned to the G-Range. The undersigned finds the Plaintiff's reinstatement to her former position at the G-Range to be an appropriate remedy. Therefore, it is RECOMMENDED that Plaintiff be reinstated to her former position at G-Range.

43. It is also RECOMMENDED that USAI be DIRECTED to purge all negative paperwork from the Plaintiff's personnel file stemming from the discriminatory actions of the Defendant.

44. Defendant has repeatedly retaliated against the Plaintiff for asserting claims of racial discrimination. Defendant has threatened to fire anyone who files a claim of racial discrimination with the THRC. Therefore, the undersigned RECOMMENDS the Defendant be ordered to cease and desist from all retaliatory conduct against the Plaintiff for asserting her rights under Title VII.

45. The Plaintiff may recover compensatory and punitive damages pursuant to 42 U.S.C. § 1981a for discriminatory employment practices in violation of Title VII. *See* 42 U.S.C. § 1981a. Plaintiff need only prove punitive damages by a preponderance of the evidence. *White v. Burlington North & Santa Fe R. Co.*, 364 F.3d 379, 805-806 (6th Cir. 2004).

46. "Compensatory damages awarded ... shall not include back pay, interest on back pay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000E-5(g)]." 42 U.S.C.A. § 1981a (b)2.

47. A complaining party may recover punitive damages under [42 U.S.C. § 1981a] against a respondent (other than a government, government agency or political

subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual. 42 U.S.C. § 1981a(b)(1).

48. USAI employed thirty people during the time the events giving rise to this lawsuit took place. Therefore, the total amount of compensatory and punitive damages that may be awarded to the Plaintiff is limited to $50,000. *See* 42 U.S.C.A. § 1981a(b)(3)(A) ((limiting to a sum total of $50,000 the amount of compensatory damages awarded under Section 1981a for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages where the defendant employed 15 to 100 employees).

49. Accordingly, it is RECOMMENDED that Plaintiff be awarded compensatory damages for her emotional pain, suffering and loss of enjoyment of life in the amount of $20,000. It is further RECOMMENDED the Plaintiff be awarded punitive damages in the amount of $10,000.

50. Plaintiff is further entitled to reasonable attorney's fees incurred in prosecuting this action. *See* 42 U.S.C.A. § 2000e-5(k). I have reviewed the invoices submitted by Plaintiff's counsel and conclude the number of hours worked given the issues and facts involved in the case and the hourly rate of $125.00 to be reasonable.

51.  Accordingly, it is RECOMMENDED the Plaintiff be AWARDED attorney's fees in the amount of $10,580.00 to date.

52.  As the prevailing party in the instant suit, Plaintiff is also entitled to her costs. *See* Fed. R. Civ. P. 54(d)(1).

53.  Accordingly, it is RECOMMENDED that Plaintiff be awarded costs in the amount of $350.00.

54.  "Interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C.A. § 1961(a).

55.  Accordingly, it is RECOMMENDED that Plaintiff be awarded post judgment interest on the amount of money awarded to the Plaintiff in the Court's final judgment.

## IV. Conclusion

Accordingly, for the reasons stated herein, it is RECOMMENDED that

(1) Defendant be ORDERED to purge all negative comments in the Plaintiff's personnel file,

(2) Defendant be ORDERED to reinstate Plaintiff to her former position in the G-Range,

(3) Defendant be ORDERED to cease and desist from all retaliatory conduct against the Plaintiff in violation of Title VII,

(4) Plaintiff be AWARDED back pay in the amount of $24,742.54,

(5) Plaintiff be AWARDED compensatory damages in the amount of $20,000.00,

(6) Plaintiff be AWARDED punitive damages in the amount of $10,000.00,

(7) Plaintiff be AWARDED costs in the amount of $350.00,

(8) Plaintiff be AWARDED attorney's fees in the amount of $10,580.00, and

(9) Plaintiff be AWARDED post-judgment interest on the total amount awarded

to her.[6]


s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

# APPENDIX 1

## LOST WAGES

On October 2004:

Regular Hourly Rate        **$15.42**

Tunnel Work Rate during
      40 hour work week    **$17.42**

Tunnel Work Rate in addition to
      40 hour work week    **$26.13**


January 4, 2005—Overtime List—Ethel Lee had **1133.028** hours of overtime at G-Range

December 29, 2006—Overtime List—Judy Cope had **2227.528** hours of overtime at G-Range

### Calculations

```
  2227.528   Judy Cope's overtime hours on December 29, 2006
 -1133.028   Ethel Lee's Tunnel Work overtime hours January 4, 2005
  1094.500   Number of Tunnel Work overtime hours Judy Cope
             worked since January 4, 2005
```

```
 1094.500
 -   25.000   Hours of Tunnel Work overtime potential worked by Ethel
              Lee from January 5, 2005 until her removal approx. 10 days later
 1069.500    Number of Tunnel Work overtime hours Judy Cope
             worked since Ethel Lee's Removal from G-Range
```

```
 1069.500
 x  $26.13    Tunnel Work overtime wage rate
 $27,946.04  Tunnel Work wages Ethel Lee would have earned if she had
             not been removed from G-Range and Tunnel Work
```

| | |
|---|---|
| 1059.026 | Number of ***regular*** overtime hours listed for Ethel Lee's position in the December 29, 2006 Overtime Report. |
| - 920.528 | Number of ***regular*** overtime hours listed for Judy Cope in the January 4, 2005 Overtime Report. |
| 138.498 | Number of hours Plaintiff could have worked in ***regular*** overtime after January 15, 2006 until December 29, 2006. |

| | |
|---|---|
| 138.498 | |
| x $23.13 | ***Regular*** overtime wage |
| $3,203.46 | Amount of ***regular*** overtime pay Plaintiff could have earned after she was removed from the G-Range. |

| | |
|---|---|
| $27,946.04 | Tunnel Work wages Ethel Lee would have earned if she had not been removed from G-Range and Tunnel Work |
| - $3,203.46 | Amount of ***regular*** overtime Plaintiff could have earned after she was removed from the G-Range. |
| **$24,742.54** | **Back Wages Due Plaintiff from Defendant.** |